UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **WILLIAM T. BOYD, JR.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-1281 RHH |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,**[1] | ) |
| | ) |
| Defendant, | ) |

**MEMORANDUM AND ORDER**

Plaintiff William T. Boyd, Jr. seeks review of the decision of Defendant Acting Social Security Commissioner Kilolo Kijakazi, denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

**I.      Background and Procedural History**

On June 4, 2018, Plaintiff filed an application for DIB, alleging he was disabled as of May 25, 2018, due to a back injury resulting in surgery, depression, diabetes, asthma and arthritis.  (Tr. 159-160, 192)[2]  The Social Security Administration (SSA) initially denied Plaintiff's claim in September 2018, and he filed a timely request for a hearing before an administrative law judge (ALJ).  (Tr. 89-90)  The SSA granted Plaintiff's request for review and conducted a hearing in August 2019.  (Tr. 45-70)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff later amended his alleged onset date to August 15, 2017.  (Tr. 171)

1

In a decision dated October 29, 2019, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act from August 15, 2017, through the date of this decision." (Tr. 15-35)  Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-6)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

II.     **Evidence Before the ALJ**

Plaintiff, born August 8, 1974, testified that from 1995 to 2007, he worked as a deputy sheriff, which involved lifting more than 100 pounds on a regular basis. (Tr. 52-53, 56, 159)  He also worked as a delivery driver/assistant manager in the evenings after work, and then for the Metropolitan St. Louis Sewer District opening and televising sewer lines and running a cleaning truck. (Tr. 53-54)  Each position regularly required lifting a minimum of 50 pounds. (*Id.*)

In March of 2015, while working as a senior technician with MSD, Plaintiff was on the side of a creek lifting a 180 pound sewer lid off the frame when his feet slid. (Tr. 399)  Plaintiff developed severe pain at that time and engaged in physical therapy. (*Id.*)  In October of that year, Plaintiff had another work exposure when he "missed a curb". (*Id.*)  He had a third exposure in November 2015, as he and two others used a pry bar to lift a concrete storm lid weighing 300 pounds. (*Id.*)

Plaintiff underwent spinal fusion surgery on August 25 and August 28, 2017. (Tr. 427-432)  Subsequent to his surgeries, Plaintiff's employer attempted to place him in a sedentary position, from January 4 to March 15, and April 25 to May 23, 2018. (Tr. 55, 171)  In that capacity, Plaintiff sat at a desk and looked at videos on the computer, typed in codes, and looked for defects

in the sewer lines. (Tr. 55) Plaintiff testified he eventually lost that position both because it was not a permanent job and because he took too much time off work. (Tr. 57-58)[3]

With respect to activities and household chores, Plaintiff stated that he was able to care for himself, including toileting, showering, preparing meals and feeding himself. (Tr. 50) He was unable to put on socks or tie his shoes, but was able to climb stairs (although it caused pain at times). (Tr. 51) Plaintiff reported experiencing low back pain and leg cramps from sitting, and stated that he was able to stand in one place for a half-hour to an hour before his leg went numb. (Tr. 58-59) He further stated that he drove short distances every day, taking his children to and from school, and that the activity increased his back pain at times. (Tr. 60) He testified that he often needed to lay down one to two times a day, and the longest he had gone without doing so in the two years since his surgery was three days. (Tr. 61) Plaintiff did acknowledge walking unassisted during a visit to Six Flags, but stated his pain was high afterwards. (Tr. 61-62)

With respect to medication, Plaintiff reported taking Gabapentin, which he said helped "somewhat" with the nerve pain. (Tr. 63)[4] He stated neither epidural steroid injections, water therapy, nor work conditioning provided lasting relief. (Tr. 62-63) Finally, Plaintiff stated he was told to walk a mile in the morning and evening, but when he did he experienced lower back and leg pain. (Tr. 65)

A vocational expert testified at the hearing. (Tr. 65-69) The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, education, and past work experience, who could perform work at only the sedentary exertional level, with the following additional limitations:

---

[3] Plaintiff stated that he left early or called in sick four or five times between January and March, and once or twice between April and May. (Tr. 58)
[4] Plaintiff stated he tried not to take Gabapentin all day because it led to drowsiness. (Tr. 63)

3

> Limited to occasional ramps and stairs, no ladders, ropes or scaffolds, occasional balance, stoop, kneel, crouch, crawl, no unprotected heights, no hazardous machinery, only occasional exposure to extreme temperatures or vibrations.

(Tr. 67) The vocational expert stated that such an individual would not be able to return to any of Plaintiff's past work, but that there existed other unskilled jobs in the national economy that he could perform, such as addresser, document preparer, and information clerk.[5] (Tr. 67-68) The vocational expert stated the same jobs in the same numbers would be available should the hypothetical individual need to stand for either five or ten minutes for every hour seated, while remaining on task. (Tr. 68) The vocational expert opined that there would not be jobs available for the hypothetical individual should he need to be off task for 15 percent of the day, outside of regularly scheduled breaks. (*Id.*) She stated that the jobs she identified would typically allow a maximum of one absence per month. (*Id.*)

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in his Uncontroverted Material Facts, which the Commissioner did not contest. (ECF Nos. 26, 29) The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### III.  Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

---

[5] The vocational expert noted that all of her proposed jobs were classified as sedentary. (Tr. 67-68)

U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(g).

## IV. The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520 and found that Plaintiff: (1) had not engaged in substantial gainful activity since August 15, 2017, the amended alleged onset date; and (2) had the severe impairments of degenerative disc disease, obesity and status post lumbar fusion, that significantly limited his ability to perform basic work activities as

6

required by SSR 85-28.  (Tr. 17)[6]  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 21)  For example, the ALJ noted that Plaintiff had not generally received the type of medical treatment one would expect for a totally disabled individual.[7]  (Tr. 29)  Specifically, she noted that post-surgery and surgical follow-up he treated only with his primary care physician, and that he was no longer prescribed narcotic medication but instead managed his pain solely with Gabapentin and occasional Tramadol.  (*Id.*)  The ALJ further noted that Plaintiff failed to follow-up on recommendations made by his treating physician, "which suggests that the symptoms may not have been as serious as has been alleged[.]"  (Tr. 29-30)[8]  Finally, with respect to Plaintiff's reported daily activities, which admittedly were

---

[6] The ALJ found that while the record reflected diagnoses of asthma, hyperlipidemia, diabetes mellitus, and obstructive sleep apnea, those impairments did not impose more than minimal work-related functional limitations and were not severe.  (Tr. 17)  She further found that Plaintiff's medically determinable mental impairments of major depressive disorder and generalized anxiety disorder did not cause more than minimal limitation in his ability to perform basic mental work activities and thus were non-severe.  (Tr. 18)  Plaintiff does not challenge these findings, and so the Court does not discuss them in its Order.

[7] The ALJ stated that although Plaintiff's treatment for the allegedly disabling symptoms, including surgery, would normally weigh somewhat in his favor, the record revealed the treatment had been generally successful in controlling the symptoms.  (Tr. 29)

[8] The ALJ noted that Plaintiff was counseled on following a diabetic diet as well as one low in cholesterol, getting regular exercise, and using his CPAP machine.  (Tr. 30)  She concluded:
> Generally, individuals with disabling impairments seek medical assistance and follow medical advice in order to obtain some relief from the alleged significant symptoms.  The claimant's failure to do so is one indication, among others, which suggests he is not motivated fully to return to substantial gainful activity and is not accurately representing his level of functioning….The failure to follow medical

7

"fairly limited", the ALJ found two factors weighed against considering the allegations to be strong evidence in favor of a finding of disability: first, that the limitations could not objectively be verified with any reasonable degree of certainty; and second, that "even if the claimant's daily activities [were] truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (*Id.*)

The ALJ considered the medical opinions in the record, starting with that of the State agency medical consultant, Dr. John Marshall Jung. (Tr. 30) She summarized Dr. Jung's assessment as follows:

> The State agency medical consultant found the claimant capable of lifting/carrying/pushing/pulling 20 pounds occasionally and 10 pounds frequently; standing/walking for six hours in an eight-hour workday; sitting for six hours in a workday; frequently climbing ramps and stairs but never ladders, ropes and scaffolds; frequently balancing; occasionally stooping, kneeling, crouching and crawling; with no concentrated exposure to extreme temperatures, humidity and avoiding even moderate exposure to pulmonary irritants.

(*Id.*) She found that Dr. Jung's September 2018 physical RFT assessment was not persuasive, however, "as additional medical evidence received at the hearing level better supports the findings set forth above." (*Id.*)[9]

The ALJ then considered the opinion of Dr. Brett A. Taylor, Plaintiff's surgeon. She summarized Dr. Taylor's findings as follows:

> Dr. Taylor…noted the claimant recovered well and "has permanent restrictions in the sedentary demand."  Dr. Taylor limited the claimant to lifting five pounds,

---

> advice is more consistent with a minimal, tolerable, and non-disabling degree of alleged symptoms.

(*Id.*)
[9] The ALJ ultimately imposed greater restrictions than those proposed by the State agency medical consultant. (Tr. 19)

8

> limited[10] bending, kneeling, crawling, and squatting, occasional[11] sitting, standing, walking, and climbing stairs but limited climbing ladders, occasional working overhead and reaching above shoulder level, occasional use of the hands for grasping and repetitive motion.

(Tr. 30)  The ALJ found Dr. Taylor's February 2018 opinion was persuasive, because he "was the claimant's treating surgeon, followed up with the claimant for months after surgery and his limitations were supported by his contemporaneous office notes as described above.  Further, the objective findings noted by Dr. Hurford[12] also supported Dr. Taylor's findings."  (Tr. 30-31)

The ALJ next considered the Independent Peer Review completed by Dr. Eric Kerstman during the course of Plaintiff's worker's compensation claim.  As summarized by the ALJ, Dr. Kerstman

> found the claimant capable of lifting, carrying, pushing and pulling a maximum of 10 pounds occasionally; frequently[13] sitting with the ability to change positions between sitting, standing or walking as needed; occasionally standing, walking and climbing stairs; occasionally bending, kneeling and squatting; with no climbing of ladders or exposure to unprotected heights.  He found no restrictions or limitations in the use of the upper extremities for handling, fingering, grasping, reaching, or typing.  Dr. Kerstman found the claimant "capable of performing full-time sustained work capacity within the above supported restrictions and limitations."

(Tr. 31)  The ALJ found Dr. Kerstman's July 2018 opinion persuasive, because although he was not a treating physician,

> he did have the benefit of reviewing the entire medical file of the claimant.  He noted his limitations were supported by the treatment notes showing some impairment following the back surgery.  He provided specific examples from the

---

[10] In the Work Status Report completed by Dr. Taylor on February 27, 2018, "limited" is defined as 0-1 hours per workday.  (Tr. 473)

[11] Dr. Taylor's Work Status Report defined "occasional" as 1-3 hours per workday.  (Tr. 473)

[12] Dr. Patricia Hurford was Plaintiff's pain management doctor.  (Tr. 607-622)

[13] Although the term "frequent" is not defined in Dr. Kerstman's report, Dr. Taylor's Work Status Report defined it as 3-6 hours per workday.  (Tr. 473)  Furthermore, Social Security Ruling 83-10 explains that "frequent" means "occurring from one-third to two-thirds of the time."  SSR 83-10, 1983 WL 31251, at *6 (Soc. Sec. Admin. Jan. 1, 1983).

treatment records from Dr. Hurford as well as Dr. Taylor.  His findings were consistent with the medical records as a whole.

(*Id.*)

Finally, as relevant here the ALJ considered the Independent Medical Evaluation of Dr. David Volarich, a non-treating physician.  (Tr. 31)  She summarized his findings as follows:

> Dr. Volarich found the claimant should avoid all bending, twisting, lifting, pushing, pulling, carrying, climbing and other similar tasks; should not handle weights greater than 5-10 pounds and limit this to occasionally assuming proper lifting technique; should not handle weight over his head or away from his body nor should he carry weight over long distances or uneven terrain; should avoid remaining in a fixed position for any more than 30 minutes at a time including both sitting and standing; should change positions frequently to maximize comfort and rest when needed.  The remainder of the limitations were missing.[14]

(*Id.*)  The ALJ found Dr. Volarich's October 2018 opinion was not persuasive, as

> [t]he doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.  Moreover, the remainder of the report continuing objective findings was missing.  Further, the limitations were not consistent with the other medical source statements in the file nor the objective findings from treating physicians.

(Tr. 32)

After "careful consideration of the entire record," the ALJ determined that Plaintiff had the RFC to perform sedentary work,

> except lift, carry, push and pull 10 pounds occasionally and less than 10 pounds frequently; sit for six hours; stand/walk for two hours; occasionally climb ramps and stairs but never ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch and crawl; with no exposure to unprotected heights, hazardous machinery and only occasional exposure to extreme temperatures or vibration. The claimant would further need to stand for 10 minutes for every hour seated, while remaining on task.

---

[14] Earlier in her opinion, the ALJ noted that only the even numbered pages of Dr. Volarich's Independent Medical Examination were submitted by claimant's representative.  (Tr. 27)  The same holds true for the transcript provided to the Court.

10

(Tr. 17, 19)  Based on the vocational expert's testimony, the ALJ found that Plaintiff could not perform any past relevant work, but had the RFC to perform jobs that existed in significant numbers in the national economy, such as addresser, document preparer, and information clerk. (Tr. 32-34)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 15, 2017, through the date of her decision.  (Tr. 34)

## V.     Discussion

Plaintiff claims the ALJ erred in determining his RFC because substantial evidence did not exist in the record to support the RFC determination.  (ECF No. 26)  More specifically, Plaintiff contends the ALJ erred by improperly evaluating the medical opinion evidence, resulting in a determination that Plaintiff possessed the RFC to perform sedentary work.  The Commissioner counters that substantial evidence supported the ALJ's RFC determination.  (ECF No. 29)

### A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'"  *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] 'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'"  *Id.* (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'"  *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, the

11

Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

    B.  RFC Determination

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

The RFC "'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'" *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

As noted above, the ALJ stated that she had reached her conclusion "[a]fter careful consideration of the entire record[.]" (Tr. 19) The record contains a Work Status Report that Dr. Taylor, Plaintiff's treating physician, completed on February 27, 2018. (Tr. 473) As relevant here, Dr. Taylor opined that Plaintiff could sit only occasionally, meaning 1-3 hours in an 8-hour workday. (*Id.*) Dr. Taylor further noted that Plaintiff had returned to work on a trial basis in

sedentary demand, and reported that he was doing well, but that in that position Plaintiff was "able to alternate sitting and standing frequently and walk[] one-half to one mile per day while at work." (Tr. 474)  The ALJ found that Dr. Taylor's February 27, 2018 report was persuasive, because he "was the claimant's treating surgeon, followed up with the claimant for months after surgery and his limitations were supported by his contemporaneous office notes as described above." (Tr. 30-31)

The record also contains an Independent Peer Review completed by Dr. Kerstman.  As relevant here, Dr. Kerstman found Plaintiff capable of "[f]requent sitting with the ability to change positions between sitting and standing or walking as needed."  (Tr. 604)  The ALJ found Dr. Kerstman's July 2018 opinion persuasive, because although he was not a treating physician,

> he did have the benefit of reviewing the entire medical file of the claimant.  He noted his limitations were supported by the treatment notes showing some impairment following the back surgery.  He provided specific examples from the treatment records from Dr. Hurford as well as Dr. Taylor.  His findings were consistent with the medical records as a whole.

(Tr. 31)

Despite these findings, in posing her hypotheticals during the hearing the ALJ initially imposed no limitations on sitting, standing or walking, other than asking the vocational expert to consider an individual who could perform work at only the sedentary exertional level.  (Tr. 67) Under the regulations, "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).  Social Security Ruling 83-10 further explains that "[s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should

13

generally total approximately 6 hours of an 8-hour workday." 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983). The ALJ never modified the hypothetical to incorporate Dr. Taylor's restriction that Plaintiff was capable of sitting only 1-3 hours in an eight-hour workday.

While the ALJ's hypothetical was consistent with Dr. Kerstman's finding that Plaintiff was capable of frequent sitting, she did not incorporate the limitation that Plaintiff be permitted to change positions between sitting and standing or walking as needed. Instead, the ALJ modified the hypothetical to incorporate a limitation that the individual be allowed to stand for five or ten minutes for every hour seated (while remaining on task), or that he be permitted to be off task for 15 percent of the day, outside the regularly scheduled break periods. (Tr. 68) The vocational expert responded that while the hypothetical individual with the former limitation would have the same jobs in the same numbers available to him, the individual with the latter limitation could not find employment because no jobs exist that fit within the parameters of the hypothetical. (*Id.*)

As noted above, in reviewing the Commissioner's ruling, the Court's task is to determine whether the Commissioner's denial of benefits is supported by substantial evidence. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005). The ALJ found Plaintiff was capable of sedentary work, which she described as including the ability to sit for up to 6 hours in an 8-hour workday. (Tr. 19) However, the ALJ simultaneously concluded that Dr. Taylor's assessment that Plaintiff could sit for only 1-3 hours per workday was persuasive. (Tr. 30) The ALJ further found that Plaintiff would need to stand for 10 minutes for every hour seated, while remaining on task, while simultaneously crediting Dr. Kerstman's assessment that Plaintiff would require the ability to change positions between sitting, standing or walking as needed (with no stated requirement that he remain on task while doing so). (Tr. 31) This distinction is significant, because although the sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch,

14

at two hour intervals", "[t]he need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." *Ellis v. Barnhart*, 392 F.3d 988, 996-997 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6, 7 (July 2, 1996)).[15]

In making her determination, the ALJ did not explain how any evidence of record supported the specific limitations she imposed. In particular, she did not discuss how the medical evidence of record supported her conclusion that Plaintiff had the ability to sit for six hours, with the only qualification being that he have the ability to stand for 10 minutes for every hour seated, while remaining on task. *See Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020) ("There is simply no reliable evidence providing a basis for the specific conclusion that Noerper can stand or walk for 6 hours in an 8-hour workday.") An ALJ's RFC assessment must discuss and describe how the evidence supports each conclusion, and must cite specific medical facts and nonmedical evidence in doing so, as well as resolve any material inconsistencies or ambiguities in the evidence of record. SSR 96-8p, 1996 WL 374184, at *7. The ALJ did not undergo this process here. In other words, although she thoroughly summarized the medical evidence of record, the ALJ did not justify how she translated her understanding of the medical evidence into a conclusion that Plaintiff could engage in sedentary work within the stated parameters.

The Court recognizes that an ALJ need not "in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality." *Noerper*, 964 F.3d at 746. "Something, however, is needed", *Id.*, as an ALJ may not simply draw her own inferences about a claimant's

---

[15] As noted above, the ALJ did not ask the vocational expert to consider how adding the requirement that the individual be permitted to change between sitting, standing and walking frequently or "as needed" would affect the occupational job base.

15

functional abilities from medical reports. *Combs*, 878 F.3d at 646. "Here, the absence of evidence translating the medical evidence and subjective complaints into functional limitations….leaves us unable to determine the permissibility of the Commissioner's RFC determination." *Noerper*, 964 F.3d at 747 (citation omitted). *See also Draper*, 425 F.3d at 1130 (internal quotation marks and citations omitted) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.")

Upon consideration of the foregoing, the Court will remand this matter to the Commissioner to more fully identify, evaluate and supplement as necessary the medical and nonmedical evidence of record supporting either her original conclusion as to Plaintiff's RFC, or any amended RFC determination she may render.

As further support for its decision to reverse, the Court finds the ALJ failed to fulfill her duty to develop the record. "Given the non-adversarial nature of social security hearings, ALJs have a duty to fully and fairly develop the record." *Kathcart v. Saul*, No. 4:19CV641 RWS, 2020 WL 1433637, at *2 (E.D. Mo. Mar. 24, 2020) (citing *Ellis*, 392 F.3d at 994). "This duty applies even in cases where the claimant is represented by counsel." *Id.* (citation omitted). "Failure to develop the record is reversible error, but reversal is only warranted where the failure resulted in unfairness or prejudice to the plaintiff." *Id.* (citation omitted).

In the instant case, the ALJ noted that she received only the even numbered pages of Dr. Volarich's Independent Medical Examination; all the odd pages were missing. (Tr. 27) The ALJ conceded that both "the remainder of the limitations" and "the remainder of the report containing objective findings" were missing. (Tr. 31-32) The ALJ apparently made no effort to obtain the

16

missing pages, however, instead concluding from the truncated report that Dr. Volarich's opinion was not persuasive, as he "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (Tr. 32)[16]

Upon consideration of the foregoing, the Court finds the ALJ's failure to develop the record by requesting Dr. Volarich's full report is reversible error, as it may have resulted in unfairness or prejudice to Plaintiff.

VI. Conclusion

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An order of remand shall accompany this Memorandum and Order.

Dated this 10th day of April, 2023.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE

---

[16] The ALJ further stated that Dr. Volarich's imposed limitations "were not consistent with the other medical source statements in the file nor the objective findings from treating physicians." (Tr. 32)

17